**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-1129 & 23-2095
_____

MEDICAL TECHNOLOGY ASSOCIATES II INC

v.

CARL W. RAUSCH; WORLD TECHNOLOGY EAST II LTD

JONATHAN G. GRAVES,
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-01095)
U.S. District Judge:  Honorable Michael M. Baylson
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 4, 2023
_____

Before: SHWARTZ, CHUNG, and MCKEE, <u>Circuit Judges</u>.

(Filed: December 6, 2023)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Jonathan G. Graves appeals the District Court's orders imposing sanctions against him. For the following reasons, we will affirm the District Court's orders.

I

Graves represented Plaintiff Medical Technology Associates II Inc. in an intellectual property dispute against Defendants Carl W. Rausch and World Technology East II Limited. After Plaintiff filed its complaint, Defendants moved to compel arbitration and the District Court conducted a hearing on arbitrability. Before the hearing, the Court ordered the parties to submit a list of witnesses and exhibits they intended to introduce. Hearing exhibits were admitted "since they were actually shown to a witness" and no exhibits were admitted without testimony addressing the content of the exhibits. App.597. At the end of the two-day hearing, the Court instructed the parties to agree to a format for post-hearing briefing, specifying "I don't want any attachments," recognizing that the briefs "would reference exhibits that have been introduced or marked." App. 639-40.

Thereafter, the District Court explained during a telephone conference that, among other things, it would allow the parties to present additional factual testimony if the parties chose to do so, but if not, the "record [would] remain closed." App. 663. The Court then issued an order entitled "Order Re: Scheduling," which set forth deadlines and limited each side's initial briefs to thirty pages and reply briefs to fifteen pages ("Scheduling Order"). The

Scheduling Order also set a deadline for production of witness lists and a summary of their testimony "[i]n the event that either party wishe[d] to present additional fact testimony." App. 392.

Both parties notified the District Court that they did not intend to provide additional factual testimony. However, Graves, on behalf of Plaintiff, submitted an eight-page brief that sought to explain (1) Plaintiff's decision to not present such testimony and (2) Plaintiff's views on the burden of proof to plead fraud[1] and certain aspects of the record. In addition, Graves attached, and sought to admit, ten exhibits totaling fifty-three pages that contained pre-suit correspondence between counsel. Graves offered to provide a foundation witness to authenticate the exhibits if the Court desired. Plaintiff argued that these documents answered questions that the District Court posed during the hearing and telephone conference.[2]

Defendants objected to the sixty-one-page submission, arguing that it violated the Scheduling Order and sought to present exhibits that Defendants had not been able to address because they were not identified on the exhibit list or at

---

[1] A central issue in the motion to compel arbitration was whether Rausch fabricated an alleged development and license agreement that contained the arbitration provision.

[2] Nine of these exhibits were previously filed as attachments to Plaintiff's opposition to Defendants' motion to set aside entry of default. A portion of the tenth exhibit had been admitted by the District Court at the hearing on arbitrability (as a cover email without the referenced attached letter). Five of the exhibits had also been filed as exhibits to Plaintiff's motion for partial summary judgment. Only the cover email to one exhibit was identified on the exhibit list or used at the hearing.

the hearing. Defendants also noted that Plaintiff had previously taken liberty with the District Court's rules and asked the Court to strike the ten exhibits and subtract seven pages from the thirty-page limit for Plaintiff's post-hearing brief.

In response, the District Court ordered both Graves and Plaintiff to show cause why sanctions should not be imposed ("OTSC") for filing a submission that "was not authorized, not requested, not responsive to any Court statement or order, and was thus uncalled for, improper, abusive, and a blatant attempt to gain an unfair advantage over Defendants." App. 732. The OTSC required Graves to respond to certain questions, such as his reasons for filing the submission, the authority that permitted the filing, whether any of the exhibits were marked or attached to a filing with the Court, and whether he was seeking to admit the exhibits "into evidence without following the proper procedural mechanisms." App. 732-33. The OTSC also notified Graves that it was considering striking his pro hac vice admission, imposing monetary sanctions, or restricting Plaintiff's claims or evidence, but did not explicitly identify the rule, statute, or other authority upon which sanctions might be based.

After the parties responded to the OTSC,[3] the District Court imposed sanctions on Graves under Federal Rule of Civil Procedure 16(f) because "after advising the Court that Plaintiff would not present any fact testimony, [Graves]

---

[3] The District Court also granted Plaintiff's motion to present an expert report on the appropriateness of sanctions.

4

nonetheless simultaneously filed a brief and exhibits attempting to put testimonial evidence into the record, on the issue of arbitrability, without subjecting any of the individuals who[se] statements were contained in the exhibits to cross-examination." App. 36-37. The Court ordered Graves to (1) attend six hours of continuing legal education courses on federal practice and procedure, and (2) "[p]ursuant to Rule 16(f)(2), . . . personally pay the reasonable expenses, to include attorney's fees, that Defendants incurred due to the '[s]ubmission.'" App. 38-39. Defendants sought $6,692.50 in fees, an amount Graves does not dispute.

The parties have since settled the litigation, and the District Court dismissed the case with prejudice but allowed the parties to retain the ability to enforce, challenge, or appeal the sanctions order. Graves appealed the initial sanctions order. Several months later, the Court entered an order awarding monetary sanctions in the amount of $6,692.50, which Graves has also appealed.

II[4]

The District Court's imposition of sanctions did not (1) violate Graves's due

---

[4] We have jurisdiction under 28 U.S.C. § 1291. First, a sanctions order filed before the sanctions amount is set becomes final when the district court dismisses the underlying claims with prejudice. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 132-33 (3d Cir. 2009). Here, Graves appealed the initial sanctions order after the District Court filed its order dismissing all claims with prejudice. Second, even if the appeal of the sanctions order was premature because it was filed before the monetary sanctions were set, it has since ripened because (1) a monetary sanction order has been issued, (2) Graves does not challenge the monetary amount, and (3) Defendants are not prejudiced by premature appeal. See DL Res., Inc. v. FirstEnergy Sols. Corp., 506 F.3d 209, 215-16 (3d Cir. 2007).

process rights or (2) constitute an abuse of discretion under Rule 16.

## A

Before "sanctioning an attorney, a court must provide the party to be sanctioned with notice of and some opportunity to respond to the charges."[5] Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir. 1990) (first citing Eash v. Riggins Trucking Inc., 757 F.2d 557, 570-71 (3d Cir. 1985); then citing Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 227-28 (7th Cir. 1984)). "The party against whom sanctions are being considered is entitled to notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." Prosser v. Prosser, 186 F.3d 403, 406 (3d Cir. 1999) (quoting In re Tutu Wells Contamination Litigation, 120 F.3d 368, 379 (3d Cir. 1997)). While a sanctioned party is entitled to notice of the legal rule upon which sanctions might be based, we will nonetheless uphold a sanctions order in the absence of explicit notice of the precise legal authority relied upon where the record indicates that the sanctioned party had notice of the sanctionable conduct and was aware of the factors the court will consider in deciding whether to impose sanctions. See Fellheimer, Eichen & Braverman, P.C. v. Charter Techs., Inc., 57 F.3d 1215, 1225-27 (3d Cir. 1995).

Although the OTSC did not identify the precise rule upon which the District Court

---

[5] "When the procedure the court uses to impose sanctions raises due process issues of fair notice and the right to be heard, the standard of review is plenary." Adams v. Ford Motor Co., 653 F.3d 299, 304 (3d Cir. 2011) (citing Martin v. Brown, 63 F.3d 1252, 1262 (3d Cir. 1995)).

6

intended to rely, we can state with "reasonable assurance" that Graves had notice of the sanctionable conduct and knew the "particular factors" he had to address to avoid sanctions, and, therefore, the Court's imposition of sanctions complied with due process. Id. at 1226 (quoting Jones, 899 F.2d at 1357). The Court identified the order it believed Graves violated. That order was entitled "Order Re: Scheduling," which put the parties on notice that the Court was exercising its case management authority under Rule 16.[6] See Fed. R. Civ. P. 16(b), (f)(1)(C). The Scheduling Order set forth specific instructions concerning the length, format, and deadline for briefs. The OTSC quoted these parts of the Scheduling Order, described Plaintiff's unauthorized, nonresponsive submission, and expressly noted that Graves was "fully aware that Plaintiff would have a full opportunity to submit a 30-page brief, pursuant to the Scheduling Order." App. 732. The OTSC also did not contain language indicating that it would only impose sanctions upon a showing of bad faith, ruling out reliance on authorities that would require such proof. Finally, in entering the Scheduling Order, a district court generally relies on its case management authority under Rule 16, and the OTSC identified why the Court believed that the Scheduling Order was violated, which allows us to conduct "meaningful appellate review" of the orders at issue. See Jones, 899 F.2d at 1358.

The OTSC also identified the form of sanctions the District Court was considering, including monetary sanctions, and the Court provided both Graves and

---

[6] Notably, Plaintiff's response to the OTSC acknowledged the District Court's authority to issue sanctions under Rule 16 for violations of a scheduling order.

Plaintiff the opportunity to respond to the OTSC. As such, Graves received sufficient notice that the Court was relying on its Rule 16 authority to impose sanctions, and he had an opportunity to respond before sanctions were imposed.

B

Although imposing sanctions on Graves was a rather harsh remedy for defying the Scheduling Order, the District Court acted within its discretion in doing so.[7] Graves violated the Scheduling Order by (1) submitting an unsolicited brief on subjects for which briefing was not sought and beyond the briefing the Scheduling Order permitted and (2) attaching ten exhibits when the Scheduling Order only permitted a filing that informed the Court if a party wished to present additional factual testimony. The submission violated the clear parameters that the Court set for post-hearing submissions. Although the Scheduling Order did not explicitly forbid exhibits, the Order made clear what was permitted, and the Court orally informed the parties that it did not want any attachments to the post-hearing submissions. Indeed, during its discussion with counsel,

---

[7] No party disputes that attendance at CLE courses or attorney's fees are permissible sanctions. Indeed, Federal Rule of Civil Procedure 16(f)(1)(C) allows a court to "issue any just order[] . . . if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Among the permissible sanctions are those set forth in Rule 37(b)(2)(A). Id. These rules are written in broad terms, giving the court discretion to fashion remedies that are just. Although the District Court did not list CLE attendance as a possible sanction, the Court acted well within its discretion to require it given the nature of the conduct. As to the award of fees, Rule 16(f)(2) requires a court to award reasonable fees "incurred because of any noncompliance with [Rule 16], unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). Noncompliance was not justified and the award of fees to compensate Defendants for unnecessary work was just.

8

the Court clearly stated that the hearing record would remain closed unless a party notified the Court of a desire to offer additional factual testimony. As the Court observed, "by attaching . . . new exhibits, Plaintiff is clearly seeking to introduce new facts," App. 732, and did so in a way that simultaneously (1) violated the Court's directive permitting only witness testimony, (2) could have blocked Defendants from being able to respond to the new exhibits and/or led to a new round of briefing, defeating the Court's express desire to limit such briefing, and (3) led to an unnecessary expenditure of party and Court resources. As such, the Court was well within its discretion to impose sanctions. See Fed. R. Civ. P. 16.

## III

For the foregoing reasons, we will affirm.